UTICA,
July, 1830.

King
v.
Despard.

---

### KING and WOODRUFF *vs.* DESPARD.

Where A. had contracted to build a house for B., to be paid for when finished, and had refused to go on and perform the contract because B., after the materials were collected and the building framed, had absconded, was induced to proceed and finish the building upon the representation of C. that he had purchased the interest of B. in the work, and upon his promise that he would pay A., *it was held* that the promise of C. was an original undertaking, and not within the statute of frauds.

THIS was an action of assumpsit tried at the Oswego circuit in June, 1829, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

The action was brought to recover for the building of a tan-house by the plaintiffs for the defendant. In the summer of 1827, a contract was entered into between the plaintiffs and one W. C. Tilman, whereby the plaintiffs agreed to find the materials and build a tan-house of certain dimensions for Tilman, who was to pay them for it, when finished, $413. The plaintiffs got out the timber and framed it; but before the building was raised or the sills laid, Tilman absconded and they stopt the work. Previous to Tilman's departure, he transferred the contract between him and the plaintiffs to the defendant, guarantied the fulfilment on the part of the plaintiffs, and promised to indemnify the defendant against their claims for erecting the building. After Tilman's departure, an interview took place between the defendant and the plaintiffs, in which the plaintiffs told the defendant that they had determined not to go on any further in their job, and to abide the consequences of not performing their contract. The defendant observed that he had purchased the interest of Tilman in the work, and told them to go on and finish the building and he would pay them, *or* they should have their pay. The plaintiffs accordingly went on and completed the building in October, 1827. Whilst the work was proceeding, the defendant repeatedly gave directions in respect to it, and at his request the building was erected in a place different from that marked out by Tilman, and some alterations were made from the original plan. Conversations were held between the parties as to extra work and the value of it, both parties insisting upon their rights, according to the contract with Tilman. The defendant proved that the plaintiffs had recovered a judgment against him for extra work. It was admitted by the plaintiffs that they had received of the defendant payments amounting to $228 on account of the job. When those payments were made, they, at the desire of the defendant, drew orders on Tilman, in his favor, for the amount received by them, he saying that he wanted such drafts as vouchers in his settlement with Tilman, and it was shewn that such drafts had been applied towards payment of a note of $300, which Tilman held against him. The judge was of opinion that the promise of the defendant

was within the statute of frauds, and so instructed the jury, who found a verdict for the defendant, which was now moved to be set aside.

*J. Brown*, for plaintiffs.

*D. P. Brewster*, for defendant.

*By the Court*, Savage, Ch. J. The only question in this case is whether the promise was within the statute. To me, it appears to be an original undertaking. The defendant substantially undertook that the plaintiffs should have their pay according to their contract with Tilman. The consideration for this promise is the building of the house. The plaintiffs were bound by their contract to build it, and Tilman to pay them; but when he became unable to pay, they preferred risking the consequences of a breach of their contract. The defendant had purchased the interest of Tilman in the work; it was important to him to have it completed, and the promise was not to pay Tilman's *contract*, but, as I understand it, to pay for the building according to the *terms* of that contract : it was either that, or a promise to pay as much as the building was worth. It was understood by both parties to be an undertaking to pay according to the terms of Tilman's contract, as an extra price was charged and paid for variations made from that contract. The drafts of the plaintiffs upon Tilman, unexplained, would seem to favor the idea that the building was erected upon the responsibility of Tilman, and in pursuance of the contract with him ; but when it is shewn that that form was adopted upon the suggestion of the defendant, so as to give him vouchers for the payments from what he owed Tilman, who had guaranteed the erection of the building, certainly this circumstance can prove nothing against the plaintiffs.

There was a new consideration moving from the plaintiffs to the defendant for his promise ; in fact, a new contract. The plaintiffs gave their materials and labor to the defendant ; this was an injury to them and a benefit to him, and is therefore an abundant consideration. They had abandoned their

contract with Tilman ; and had they suffered a prosecution, no more than nominal damages, if any, would have been recovered.   Tilman had paid nothing upon the contract ; and, unless the building was erected, he had nothing to pay. The plaintiffs hazarded little by refusing to go on with their contract with Tilman ; the whole building, therefore, was erected upon the promise of the defendant.   He directed the location different from that agreed on with Tilman ; he superintended the building and directed alterations ; for these an extra price was paid.   There is no one circumstance in the case, when properly explained, which proves an intention on the  part of the plaintiffs to look to Tilman for their pay.   They had abandoned their contract with him ; and what passed between them and the defendant must be considered as a  new  contract.   The plaintiffs say we will not put up the building for Tilman ; the defendant says I stand in Tilman's place, I have purchased his interest in the work, and the building is to be erected for my benefit ; go on and finish it according to your agreement with Tilman, and I will pay as he agreed to pay.   Tilman's contract was adopted between these new parties as to the work to be done and the compensation to be made ; and hence, when deviations were made from the contract, it was called extra work, and paid for as such.

A new trial should  be granted, costs to abide the event.