PAYNE *vs.* BALDWIN.

The Jackson Insurance Company had entered into a contract with S. to do the mason work upon some houses which the company was building. S. made a sub-contract with the plaintiff, to furnish the plaster and ground marble required in the buildings. S. failed to pay the first installment due to the plaintiff, insisting it was not due; whereupon the plaintiff became dissatisfied, and refused to furnish any more materials. The plaintiff's agent then called on the defendant, who was president of the company, and the latter told him to " go on and furnish the stuff, and he would see it was paid for." *Held,* that this was not an original and absolute contract on the part of the defendant, but was a *collateral* agreement, for the debt or default of S. and therefore void, by the statute of frauds.

THIS was a motion by the defendant to set aside the report of a referee, and for a new trial, upon a case. The action was assumpsit ; and the declaration contained the common counts, for goods sold and delivered, &c. The referee reported $114,66 due to the plaintiff. The facts are set forth in the opinion of the court.

*H. Hunt,* for the plaintiff.

*H. G. DeForest,* for the defendant.

*By the Court,* EDWARDS, J. I think that there was sufficient evidence before the referee, to warrant him in finding that there was a delivery of the materials, for the price of which this

suit is brought; at least, we should not be authorized to set aside his report on the ground that a delivery was not proved.

The principal question in the case is, whether the defendant made such a promise as to render himself personally liable for the materials furnished.

The case shows that the Jackson Insurance Company had entered into a contract with Elias Stebbins, to do the mason work upon some houses which the company was building, and that Stebbins entered into a contract with the plaintiff to furnish the marble and plaster to be used in the building. The plaintiff's principal witness, who was also his agent, testified that he called on Stebbins for payment, who denied that any thing was due, and that, upon this being told to the plaintiff, he became dissatisfied and refused to furnish any more of the materials. The witness further said that he then called on the defendant, who was president of the company, and that he told the witness to "go on and furnish the stuff and he would see it was paid for." On his cross-examination, he said: " I think that he told me that he would see that it was paid for, or something to that effect."

The only question to be considered upon this testimony is, whether the undertaking of the defendant was original or collateral; or, in other words, whether Stebbins was liable at all for the materials furnished after the conversation between the agent of the plaintiff and the defendant.

In the case of *Matson* v. *Wharan*, (2 *T. R.* 80,) the words used were " If you do not know him you know me, and I will see you paid." This promise was held to be void by the statute of frauds. The rule there laid down has been uniformly followed since; and in all subsequent adjudications the only question which has been considered has been, to whom was the original credit given? In the case of *Chase* v. *Day*, (17 *John.* 114,) the words used were "if my nephew calls for papers, I will be responsible for the papers he shall take," and they were held to create an original undertaking. In the latter case it is evident that the whole credit was given to the defendant, and the court so held. Amongst the numerous cases in the books, the two above cited will best serve to illustrate the rule as ap-

Payne v. Baldwin.

plicable to the case in question. I should not be disposed to hold that the words used in the case first cited would under all circumstances constitute a collateral promise. I can conceive that there might be a case in which the peculiar circumstances would furnish such convincing evidence that the parties intended that the entire credit should be given to the party making such a promise, that the court would be bound to consider it an original undertaking. But I do not think that the case before us is of that character. In the first place it will be observed that the witness to the promise, who was the agent of the plaintiff, if we take his direct and cross-examination together, was not very explicit as to the precise words used. It further appears that the buildings, for which the materials were furnished, were not the property of the defendant. It was also proved that when the materials were delivered, the receipts were signed by Stebbins, and that the accounts in the defendant's books were continued against Stebbins the same as before, and that no charge was made against the defendant; and it finally appeared that the insurance company paid for the building of the houses.

Upon this state of facts, I can come to no other conclusion than that all the parties interested, believed that there was an original liability on the part of Stebbins. In the case of *Larson* v. *Wyman*, (14 *Wend.* 246,) the plaintiff had commenced repairs upon a canal boat owned by Rector, and a few days after the repairs had been commenced, the defendant told the plaintiff that "he wanted the boat done as soon as possible, and he would be responsible for the pay." The proof showed that after the work was done, a bill for the repairs was presented to Rector, and the court held that the promise of Wyman was collateral, and void by the statute of frauds.

The case of *King et al.* v. *Despard*, (5 *Wend.* 277,) was particularly relied upon by the plaintiff's counsel. In that case the plaintiffs had entered into a contract with Tilman, to build a tan house. Before the work was completed Tilman assigned his contract to the defendant, and absconded. The defendant then informed the plaintiffs that he had purchased the interest

of Tilman, and told them "to go on and finish the building, and he would pay them, or they should have their pay." It further appeared that while the work was proceeding, the defendant frequently gave directions in respect to it, and that at his request the building was erected in a place different from that marked out by Tilman, and some deviations were made from the original plan. In this case, the court very properly held that the contract was an original one as to the work done and the materials furnished after the defendant had directed the plaintiffs to go on and finish the work. The circumstances of the case admitted of no other conclusion than that the whole credit was given to the defendant.

We think that the circumstances before us require a different conclusion.

The report of the referee must be set aside and a new trial granted; costs to abide the event.

[NEW-YORK GENERAL TERM, February 7, 1853. *Edwards*, *Mitchell* and *Roosevelt*, Justices.]