CHARLES LACHMAN, Respondent, *v.* ELMER V. IRISH, Appellant.

*Statute of Frauds — oral promise to answer for the debt of another — consideration essential to an original undertaking.*

Certain workmen, having done some work for James G. Olmsted, on his employment, upon six houses he was building, proposed, on failing to receive their pay, to stop work, and were told by Elmer V. Irish, who was engaged in procuring building loans, to go to work again and do what was right and he would see them through. The men resumed work and not being paid assigned their claims to one of their number, who brought an action thereon against Irish and recovered judgment for the amount due for the work done before as well as for that done after Irish's promise. The time the men worked or the amount of compensation to which they were entitled for services performed after the promise was not distinctly shown. It appeared that Irish purchased of Olmsted two of the incompleted houses before making the promise in suit, but it did not appear what the consideration of the sale was, or that it had any relation to the debts which Olmsted then owed the workmen, nor did it appear how much of the debts due them arose for work performed upon those two houses after such purchase.

*Held,* that the evidence failed to show that the defendant had assumed the payment of Olmsted's indebtedness for the work done before his promise, upon any consideration moving to him which made the amount of such liability the defendant's own debt and the promise to pay the same an original undertaking;

That, therefore, the defendant's promise was collateral to the existing debt of Olmsted and within the provision of the Statute of Frauds declaring a promise to answer for the debt of another void unless in writing;

And, hence, that the judgment should be reversed.

APPEAL by the defendant, Elmer V. Irish, from a judgment of the County Court of Erie county, entered in the office of the clerk of that county on the 2d day of December, 1891, upon a verdict in favor of the plaintiff, and also from an order denying the defendant's motion for a new trial made upon the minutes.

The complaint alleged that the defendant was indebted to the plaintiff, also to Anderson Michael, Richard Leadbitter, James R. Clark, Alexander Carver, Edward Lee, Elijah B. Harriman, William Lansdell, John C. Reinhardt and Peter A. Nie, severally, for work, and that the said persons other than the plaintiff had assigned their claims to him. The plaintiff recovered for his work, also for that of Carver, Lee, Michael and Harriman, amounting, with interest, to seventy-five dollars and eighty-seven cents, and costs. The defendant, by his answer, put in issue the allegations of the complaint.

*Jonathan L. Slater,* for the appellant.

*C. C. De Witt,* for the respondent.

BRADLEY, J.:

The plaintiff and his assignors of the claims transferred to him, and on account of which the judgment was recovered, had, on the employment of one James G. Olmsted, performed work for him upon six houses he was building, two of them on Ferry street and the other four on Howell street in the city of Buffalo. The evidence on the part of the plaintiff tends to prove that on one occasion the defendant was at the place where Michael, Harriman and Lee were or had been at work on one of the Ferry street houses, and at the time were "laying off" there, and they stated to him that they would not work any more until they got their pay for what they had done, and that the defendant said to them, "You go ahead and do what is right, and I will see you through." Another of the witnesses, referring to the same interview, states that the defendant said, "What's the matter with you boys," and they said, "We have worked pretty nearly long enough without some money," and the defendant then said, "Now you boys go on to work, and I will see you all right." And that on another occasion, when the defendant and Olmsted were together, the plaintiff and Carver,

who had been at work on the Howell street houses, asked for payment for their work, and that the defendant said to them, " You fellows need not be alarmed about your money ; I will see that you get it ; " that he also said that he had money in the bank, and told us to " go right on ; that we would not lose a cent ; that he would see that we got it."

All of these persons did some work on the buildings after these promises, but the time they worked, or the amount of compensation to which they were entitled for services thereafter performed by them, does not distinctly appear by any evidence. The recovery was for the services performed both before and after that time.

The evidence of the promises of the defendant thus given must, for the purposes of this review, be treated as true, notwithstanding the contradiction of it on the part of the defense ; and the question arises whether any valid undertaking to pay those men was assumed by the defendant. So far as liability had accrued at the time such promises were made, the debt due to each of those workmen was that of Olmsted, by whom they had been employed, and for whom they had performed the service. The defendant was an insurance agent, and engaged in the business of procuring loans secured upon buildings in the course of construction, from time to time as the work progressed in course of completion, for persons engaged in building them.

This was the business which first brought him to the incompleted structures which Olmsted was erecting and attempting to complete. It is evident that the latter, not having the means to do it, was dependent upon loans to enable him to proceed with the work. His default in payment of the workmen produced uneasiness on their part, and an apparent purpose to quit unless payment was made or assured when the defendant's promise was made. Thereupon they continued to work. If it be assumed that his promise was an original undertaking as to the work thereafter performed by these men, it was clearly collateral as to the debt then due them from Olmsted, unless there was some new consideration beneficial to the defendant, moving to him, which had the effect to make his promise one to pay his own debt. (*Ackley* v. *Parmenter*, 98 N. Y. 425 ; *White* v. *Rintoul*, 108 id. 222.) Then the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268) would be applicable in support of the promise.

It does not appear that the defendant's promise was founded upon any consideration moving to him creating an obligation in discharge of which he promised to pay those existing debts of Olmsted. It is true he purchased of Olmsted the two incompleted houses on Ferry street, and it may be assumed that he did this before the promises referred to were made by him, but it does not appear what the consideration was of the sale, or that it had any relation to the debts which his grantor then owed the workmen, nor does it appear how much of the debts due them arose for work performed upon those two houses after the time of his purchase. Such work was presumptively for his benefit, and from his promise to pay for it would arise an obligation to do so. Beyond that the oral promise of the defendant, in its relation to work performed before it was made, was collateral to the debt of Olmsted existing for it, and, therefore, was within the statute which provides that a promise to answer for the debt, default or miscarriage of another is void unless in writing subscribed by the party to be charged with it. (2 R. S. 135, § 2.) In *Prime* v. *Koehler* (77 N. Y. 91), the consideration moving to the promisor secured to him a substantial benefit by way of relieving his premises from the foreclosure of an existing lien upon them. The promise was well held to be an original undertaking on his part. The cases of *King* v. *Despard* (5 Wend. 277), and *Quintard* v. *De Wolf* (34 Barb. 97), approach nearer to the support of the plaintiff's claim than any others to which our attention has been called, yet they are distinguishable from the present case. The results there were reached upon the ground that the contracts under which the work was commenced were abandoned, and new, independent and original undertakings entered into, covering its entire performance. In the case at bar Olmsted remained liable for the work which had been performed by those parties, and the evidence failed to show that the defendant had assumed the payment of it upon any consideration moving to him which made the amount of such liability his debt. (*Payne* v. *Baldwin*, 14 Barb. 570 ; *Weyer* v. *Beach*, 14 Hun, 231 ; *Belknap* v. *Bender*, 75 N. Y. 446 ; *Brown* v. *Weber*, 38 id. 187.)

If it should turn out that the defendant, as consideration of the sale of the Ferry street houses to him, promised to pay the money due from Olmsted to those workmen, he would be liable to them

therefor. But that does not appear by the record before us. And no support in the evidence is seen for the recovery of the amount due for the work performed by them prior to the time of the alleged promises. This question was raised by exceptions to the charge, and by refusals to charge the jury as requested.

The fact that Olmsted made a general assignment for the benefit of his creditors to the defendant has no essential bearing upon any question for the purposes of this review.

The judgment should be reversed and a new trial granted, costs to abide the event.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Judgment and order appealed from reversed and a new trial ordered, with costs to abide the event.