ENGLISH v. MOUND HOUSE PLASTER CO. et al.

(Circuit Court, D. Nevada. September 3, 1910.)

No. 1,062.

1. VENDOR AND PURCHASER (§ 186*)—DEFECTIVE TITLE—PURCHASE PRICE.
    Where a contract for the sale of an interest in real and personal property provided that, if the title to any part thereof not conveyed by quitclaim deed should be found defective, the vendors should perfect the same as soon as possible, and that all payments thereafter to be made as well as the delivery of certain stock should be delayed until such titles were perfected, the vendee was excused from a failure to tender the purchase price, etc., by the fact that there was an apparent defect in the title to certain mining claims comprising a part of the property due to a failure to perform or a failure to furnish proof of performance of the annual labor on the claims required by law.

    [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 373; Dec. Dig. § 186.*]

2. SPECIFIC PERFORMANCE (§ 97*)—TENDER OF PURCHASE PRICE.
    Where vendors by placing a mortgage on property and by conveying it to another had put it out of their power to perform their contract of sale, the vendees were not bound to tender the remainder of the purchase price or to allege such tender as a condition precedent to its right to maintain a suit for specific performance, and this though a demand was made for the deeds.

    [Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 97.*]

3. SPECIFIC PERFORMANCE (§ 114*)—ASSIGNMENT OF CONTRACT—PLEADING.
    In a suit by the assignee of a contract for the sale of real property for specific performance, it was not necessary that the bill should allege that the assignment was in writing.

    [Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 114.*]

In Equity. Bill by Paul A. English against the Mound House Plaster Company and others. On demurrer to complaint. Overruled.

Cheney, Massey & Price, for complainant.
James R. Judge, for defendant Mound House Plaster Company.
Samuel Platt, for defendants Haire.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

FARRINGTON, District Judge. The bill is, in substance, as follows: Under the contract of sale attached to the bill of complaint, the defendants Edward C. Haire and Frances F. Haire executed certain deeds purporting to convey to the United States Gypsum Company an.undivided interest in certain real estate and personal property described in the bill. At the time of the execution of the agreement, and as a part of that transaction, the Gypsum Company paid to Edward C. Haire and Frances F. Haire the sum of $1,000. The. deeds, executed about May 28, 1908, were immediately placed in escrow with the Carson Valley Bank at Carson City, Nev., to be delivered to the Gypsum Company by the bank upon the payment to the bank by said Gypsum Company for the credit of E. C. Haire a further "sum of $1,000 on or before June 28th, 1908, and the delivery to said bank on or before said date for said E. C. Haire certificates of United States Gypsum Company, representing at par value $9,000 worth of its preferred stock." It was also agreed that, if the title to any of said real estate not conveyed by quitclaim deed should be found to be defective, the Haires should perfect the same as soon as possible, and that all payments thereafter to be made, as well as said stock, could be retained by the United States Gypsum Company until such titles were perfected. Among the properties contracted to be conveyed were the Belfast and Regan mining claims, and a plaster mill.

About June 5, 1908, complainant ascertained "that there existed material defects in the title to certain of the properties," and before June 20th demanded of the Haires that such titles be perfected. This they failed to do. Thereafter, and on or about June 28th, the Haires executed and delivered to James Regan a mortgage on the mining claims mentioned in the bill, and on the 4th day of September following they executed and delivered to the defendant Mound House Plaster Company a deed, conveying to that company all their interest in the property mentioned in the bill. This mortgage and deed were executed without the knowledge or consent of the gypsum company. November 24, 1908, this mortgage was discharged. The deed was received by the Mound House Plaster Company with full knowledge of the rights of the gypsum company.

In November, 1908, the gypsum company, having ascertained that the defects in the title had been partially cured, waived all objections, except the objection to the mortgage, and demanded the delivery of said deeds, but did not tender any of the purchase price. The gypsum company at this time was not aware of the deed to the Mound House Plaster Company, nor did it learn of that fact until some time in December, 1908.

It is alleged that the United States Gypsum Company and complainant "have fully done and performed all the things and conditions required by said contract of May 28, 1908, to be by them or either of them done or performed, and that complainant is ready and willing to pay the remainder of the purchase price as soon as said Edward C. Haire and Frances F. Haire are able to convey a title thereto, free and clear of the claims of the Mound House Plaster Company." It is further alleged that, before the commencement of this suit, the gypsum company, for a valuable consideration, assigned

and transferred to complainant said contract and all its rights thereunder. Complainant prays specific performance of the contract, and a cancellation of the deed to the Mound House Plaster Company. To this bill the defendants have interposed a general demurrer.

[1] The failure to tender the purchase price of the property on or before June 28, 1908, is excused by the fact that there was apparently a defect in the title to certain mining claims described in the bargain and sale deed. This defect was due to the failure to perform, or the failure to furnish the proof showing performance of the annual labor required by law. It also appeared that a portion of the Belfast mining claim belonged to the V. & T. Railroad Company, a portion of the Regan claim to the C. & C. Railroad Company, and that the plaster mill was charged with a secret lien in favor of James Regan, F. A. Regan, and Edward Regan. Such a contingency was expressly provided for in the contract itself. By that instrument the gypsum company was authorized to retain the purchase price until the titles were perfected. It was therefore unnecessary to tender the purchase price, or any portion thereof, until the defects were cured or waived.

[2] The failure to make or allege a tender of the purchase price subsequent to June 28th, and before the commencement of this suit, is excused by the existence of the mortgage lien, and by the conveyance to the Mound House Plaster Company. The vendors thus having put it out of their power to perform the contract, a tender by the vendees would have been useless, and therefore it is unnecessary that a tender should be alleged in the pleadings. Newcomb v. Brackett, 16 Mass. 161; Delamater v. Miller, 1 Cow. (N. Y.) 75, 13 Am. Dec. 512; Smith v. Jordan, 13 Minn. 264, 97 Am. Dec. 232; Luchetti v. Frost, 65 Pac. 969;[1] 26 Am. & Eng. Ency. 42. The fact that a demand was made for the deeds could not change this rule, or of itself make that useful which before was useless. Under the circumstances, whether demand was made or not, a tender of the purchase money would have been productive of no good results.

[3] Conceding, without deciding the proposition that it was necessary in order to constitute a valid transfer of the contract from the United States Gypsum Company to complainant that the assignment should be in writing, it does not follow that it must be alleged that the assignment was in writing. If it was indispensable that the assignment should be in writing, it will be presumed, unless the contrary appears in the pleading itself, that it was in writing. This rule has been applied repeatedly to allegations as to the original contract of sale itself. Rice v. Yakima & P. C. R. Co., 4 Wash. 724, 31 Pac. 23; Bradford Inv. Co. v. Joost, 117 Cal. 204, 48 Pac. 1083, 1084; Barnsdall v. Waltemeyer, 142 Fed. 415, 73 C. C. A. 515; Lupean v. Brainard, 20 App. Div. 212, 46 N. Y. Supp. 1044; Gunderson v. Thomas, 87 Wis. 406, 58 N. W. 750.

The demurrer is overruled, and the defendants granted 20 days within which to answer.

---

[1] Reported in full in the Pacific Reporter; reported as a memorandum decision without opinion in 133 Cal. xix.